THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN RE CHRISTOPHER BLACK CANNON, Debtor. | Case No.2:15CV303 DS |
| CHRISTOPHER BLACK CANNON, Appellant | |
| v. | MEMORANDUM DECISION AND ORDER |
| WELLS FARGO BANK, N.A.; PNC BANK, N.A.; and KEVIN R. ANDERSON, Chapter 13 Trustee for Utah Appellees. | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

Appellant filed the present Chapter 13 bankruptcy case on January 25, 2015 with the United States Bankruptcy Court of the district of Utah (the "Bankruptcy Court").  The current case is Appellant's third Chapter 13 case filed in less than three years (since May 2012). Appellant's two prior Chapter 13 cases were also dismissed by the Bankruptcy Court.  The Bankruptcy Court dismissed the present Chapter 13 case, holding that Appellant exceeded the jurisdictional debt limits.  The Court held that the doctrine of issue preclusion prevented Appellant from re-litigating its prior determination that the amount of the secured debts rendered him ineligible for relief under Chapter 13; that Appellant was judicially estopped from representing that his secured debts do not exceed the § 109(e) threshold when his Schedules and Statements filed in the Second Case show that such debts did surpass the § 109(e) limit; and that Appellant's filing of the present case was part of a scheme to delay, hinder, or defraud the

Appellees and their foreclosure process.  Appellant filed this appeal, arguing that the Bankruptcy Court erred because 1) there has been a substantial change of circumstances, and 2) judicial estoppel does not otherwise apply.  This Court hereby affirms the order of the Bankruptcy Court.

## II.  ANALYSIS

### A. The Bankruptcy Court did not err in ruling that the Doctrine of Issue Preclusion Barred the Debtor From Re-Litigating Eligibility for Chapter 13 Relief Under 11 U.S.C. § 109(e)

Appellant notes that a court may impose issue preclusion unless there has been a change of circumstances since the prior adjudication.  The issue before this court is whether the Bankruptcy Court erred in ruling that there had been no such change.  Appellant argues that his filing of an actual suit in state court solidifying his claims against Wells Fargo constitutes a change of circumstances that makes issue preclusion inapplicable.  He states that a significant portion of his suit against Wells Fargo concerns Wells Fargo's having induced him to default on his mortgage, a default that Wells Fargo now seeks to capitalize on.  That lawsuit therefore represents a significant change of circumstances going to the heart of the debt and eligibility issue.

The existence of the Appellant's lawsuit against Wells Fargo, however, does not change the debt limit analysis under § 109(e) because: (1) the Debtor's claims against Wells Fargo remain unliquidated, and (2) the Debtor's claims against Wells Fargo are not relevant to the § 109(e) analysis.  § 109(e) requires the bankruptcy court to determine the amount of the secured claim as of the Petition Date. *Cannon II,* 521 B.R. at 694.  As of the Petition Date, Appellant had only filed his complaint, had not served any parties, and had not pursued or received any final adjudication of his claims.  *Appellant App. at* 269.  Nor did Appellant include any dollar amount in any specific prayer for damages in the Complaint.  Appellant's Schedules and Statements list the value of these claims and offsets as "unknown." *Appellant App. at* 27.

The debtor's alleged offsets or claims are not relevant in determining the sum of the Debtor's liquidated debts under § 109(e).  The Bankruptcy Court noted in Appellant's 2013 Case, the "fact that a claim is 'subject to defenses and counterclaims,' is not relevant to determining whether it is liquidated or unliquidated." *In re Cannon,* No. 13-24366, 2013 WL 6499304 at *9 (Bankr. D. Utah Dec. 11, 2013).  The Bankruptcy Court for the District of Utah in *In re Lambert* stated*:*

> [A] dispute based upon a debtor's claim of an offset against a creditor is not in itself a dispute over debt liability or amount.  It is a dispute over the existence, validity, or amount of a second and independent debt raised and asserted as an offset in an attempt to reduce the amount of the first debt.  The assertion of a second debt as an offset will not render the first debt unliquidated because the offset claim creates no uncertainties with regard to the liability underlying or the amount due upon the first debt.

*In re Lambert,* 43 B.R. 913, 921 (Bankr. D. Utah 1984).  Appellant's dispute of the debt does not remove the debt from the eligibility calculation, nor does it prevent ready determination of the amount of the secured debt where the proof of claim otherwise meets the requirements of the Bankruptcy Code and Bankruptcy Rules.  *See Cannon I,* 2013 Bankr. Lexis 5214, at *13, *34 (citing *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes),* 184 B.R. 82, 90 (B.A.P. 9th Cir. 1995)).  Thus the Bankruptcy Court did not err in finding that the existence of the lawsuit does not represent a change of circumstances from the prior case.

   **B.   The Bankruptcy Court Did Not Abuse Its Discretion In Holding That Appellant Was Judicially Estopped From Representing That His Secured Debts Are An Amount Less Than The Amount He Scheduled In The Second Case**

Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Vehicle Mkt. Research v. Mitchell Int'l, Inc.,* 767 F.3d

987, 992-93 (10th Cir. 2014) (internal quotations omitted) (citing *Bradford v. Wiggins,* 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). The Tenth Circuit applies the doctrine "both narrowly and cautiously," because "judicial estoppel is a powerful weapon against a party seeking to vindicate its rights." *Vehicle Mkt. Research v. Mitchell Int'l, Inc.,* 767 F.3d at 993 (10th Cir. 2011) (citations omitted).  A decision to judicially estop a party is only reviewed for abuse of discretion.  *Eastman v. Union Pac. R.R. Co.,* 493 F.3d 1151, 1156.  Abuse of discretion occurs when a court "makes a clear error judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."  *Id.* (quoting *United States v. Nickl,* 427 F.3d 1286, 1300 (10th Cir. 2005).

> Judicial estoppel generally includes the following elements:
>
>> (1) A party takes a position clearly inconsistent with an earlier-taken position; (2) adopting the later, inconsistent, position would create an impression that either the earlier or the later court was misled; and (3) allowing the party to change their position would give them an unfair advantage.

*Vehicle Mkt. Research,* at 993 (citing *Hansen v. Harper Excavating, Inc.,* 641 F.3d 1216, 1227 (10th Cir. 2100).  Appellant clearly takes a position in his 2015 case that is inconsistent with his position in the 2013 case.  In the 2013 case on *Schedule A – Real Property,* Appellant listed the Residence as subject to a secured claim of $1,676,986.81.  *Trustee's App. at* 181.  On *Schedule D – Creditors Holding Secured Claims,* Appellant listed two trust deeds in favor of PNC totaling $1,676,986.81.  *Trustee's App. at* 182.  Appellant signed a Declaration concerning the schedules, declaring under penalty of perjury that he had read the schedules and they were true and correct.  *Appellant's App. at* 122.  As a result, the Bankruptcy Court found that "[a]ccording to the

Debtor's schedules . . . the facial amounts of the Debtor's debts exceed the § 109(e) debt limits." *In re Cannon,* No. 13-24366, 2013 WL 6499304 at *6 (Bankr. D. Utah Dec. 11, 2013); *In re Cannon,* 521 B.R. 686, 694 n. 41 (D. Utah 2013).

In the 2015 case, however, on *Schedule A – Real Property,* the Appellant lists the Residence and states it is subject to a secured claim of $560,000. *Appellant's App. at* 25. On *Schedule D – Creditors Holding Secured Claims,* Appellant again lists two trust deeds secured by the Residence in favor of PNC totaling $560,000. *Appellant's App. at* 30. Again Appellant signed a Declaration Concerning Debtor's Schedules under penalty of perjury that he had read the schedules, and that they were true and correct.

There is no explanation in Appellant's Schedules and Statements for the difference. When asked at the April 9, 2015 hearing regarding the inconsistent amounts listed for PNC's secured claims against the Residence on the 2013 bankruptcy schedules, Appellant's only explanation was that the $560,000 represented the "best judgment of what the value of that—of the PNC claim would be subject to the claims that we have against PNC." *Appellant's App. at* 436:19-25; 437:1-4. Appellant did not explain the calculation of the amount. He did admit that he had not made any payments on his mortgage debts since about July 2009, with the exception of a "few" payments made prior to filing the present case during an alleged standstill agreement, *Appellant App. at* 454:5-22, and certainly none that would reduce the amount from 1.3 million to $560,000. *Appellant's App. at* 437:5-8.

Appellant argues that the second element of judicial estoppel is missing here because the estopped party must have actually prevailed on the issue in the prior proceeding and is now abandoning that earlier position for convenience. The relevant inquiry, however, is not whether Appellant prevailed in the second case; it is whether Appellant persuaded the Bankruptcy Court

to accept a former inconsistent opinion with the one he is taking in the present case.  In the Second Case, both the Bankruptcy Court and this Court on appeal examined and relied upon Appellant's Schedules and Statements listing Appellant's secured debts on the Residence at $1,676,986.81 in finding that "the facial amounts of the Debtor's debts exceed the § 109(e) debt limits."  *Cannon I,* 2013 Bankr. LEXIS 5214, at *17 - *18; *Cannon II,* 521 B.R. at 694 n. 41 (listing the claims secured by the Debtor's property in Case No. 13-24366 as listed on Schedule A and Schedule D).  Thus when Appellant listed the amount of his secured debt in the present case at only $560,000 without any explanation, clearly inconsistent with his Schedules and Statements filed in the Second Case, he created an obvious "perception" that either the Bankruptcy Court in the Second Case or in this case has been misled.  *See Eastman,* 493 F.3d at 1159-60.  Accepting his representation would give Appellant an unfair advantage to employ the automatic stay at the expense of his mortgage creditors, when it was previously determined that he was statutorily ineligible to be a Chapter 13 debtor.

> C. **The Bankruptcy Court Did Not Abuse Its Discretion in Finding That Appellant's Present Filing Is Part of a Scheme To Delay, Hinder Or Defraud Creditors Under 11 U.S.C. § 362(d)(4)(B)**

Based upon all the evidence before it, the Bankruptcy Court determined that Appellant's filing of the present case was part of a scheme to delay, hinder, or defraud creditors, involving multiple bankruptcy filings affecting Appellant's real property under § 362(d)(4)(B).  This Court reviews the Bankruptcy Court decision for abuse of discretion.  The Appellant has not made a payment since July 2009, and the loan is in default with an arrearage of not less than $756,478.35.  *Appellant App. at* 171-73 & 205-07.  Appellant has filed three bankruptcies since 2012, each either on the day of or the day before a scheduled trustee's sale of the Property.  As a result, the trustee's sales were cancelled.  *Appellant App. at* 421:19-21, 424:5-7, 434:10-16,

468:9-25, 469:1-9.  Because the timing of Appellant's Chapter 13 bankruptcy petitions evidence, at a minimum, a scheme to hinder or delay Wells Fargo's efforts to foreclose on the Residence, the Bankruptcy Court granted relief under § 362(d)(4)(B).  This Court finds that there was no abuse of discretion.

> D.  **The Bankruptcy Court Did Not Abuse Its Discretion In Dismissing Appellant's Case and Imposing A 180-Day Bar To Re-Filing Pursuant to § 109(g)(1)**

In his joinder in Wells Fargo's motion, the Chapter 13 Trustee sought imposition of a 180-day bar to Appellant's re-filing pursuant to § 109(g)(1).  The Bankruptcy Court granted the request, stating that the ruling was based on the Court's conclusion that Appellant was engaged in a scheme to delay or hinder.  *Appellant's App. at* 470.  Appellant argues that there was no basis for the Bankruptcy Court's imposition of the 180-day bar, and that the Bankruptcy Court erred when it did so.

Whether a bankruptcy court properly dismissed a bankruptcy case is "a factual question to be reviewed under the clearly erroneous standard." *Tolbert v. Fink (in re Tolbert),* 255 B.R. 214, 216 (B.A.P. 9th Cir. 2000) (citing *Pagnac v. Minnesota Dep't of Revenue,* 228 B.R. 219, 221 (B.A.P. 8th Cir. 1998)).  Section 109(g)'s central purpose is to "curb abusive repetitive filings." *In re Fulton,* 52 B.R. 627, 632 (Bankr. D. Utah 1985).  To preclude a re-filing for 180 days under 11 U.S.C. § 109(g), the movant must show (1) the Debtor failed to abide by an order of the court or failed to appear before the court in proper prosecution of the case, and (2) that such failure was willful.  The term "willful" as used in the context of § 109(g) means "deliberate or intentional." *Id.* at 634.  Repeated conduct can give rise to the court inferring from the totality of the circumstances that a debtor's actions are deliberate. *Id.* at 634.

In the present case, there is sufficient support of "willful" conduct on the part of Appellant in the record for the Bankruptcy Court's findings:  (1) this is the third Chapter 13 bankruptcy case

filed by the Appellant in the past three years on or the day before a Trust Deed sale of the Residence; (2) Appellant's prior cases were dismissed for either his failure to file Schedules and Statements and a plan, or ineligibility for Chapter 13 relief under § 109(e); (3) without an explanation as to the change in circumstances, the Appellant filed the present Chapter 13 case less than three months after the District Court ruled he was ineligible for Chapter 13 relief; and (4) as his mortgage arrearages continue to rise, his Plan provides for no treatment of the Appellees' arrearage claim, other than a statement that he will "manage" the claims outside the Plan. *Trustee's App. at* 31. Even if it did provide a proposed plan to treat the arrearages, a review of his budget and income demonstrates an inability to cure the mortgage arrears over the course of a 60-month Chapter 13 plan. *Appellant App. at* 469:19-22. Given the totality of the circumstances, this Court finds that the Bankruptcy Court's imposition of a 180-day bar is supported by the facts and is not clearly erroneous.

### III. CONCLUSION

For the foregoing reasons, this Court hereby affirms the order of the Bankruptcy Court dismissing this case.

SO ORDERED.

DATED this   19th   day of November, 2015.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT